UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY W. CRUICKSHANK, Trustee }
in bankruptcy of Precise Eng., Inc., }
                                    }
   Plaintiff,                       }
                                    }   CASE NO. CV 95-B-1440-S
v.                                  }
                                    }
FIRST SECURITY CASUALTY CO.,        }
                                    }
   Defendant.                       }

MEMORANDUM OPINION

This matter is before the court on the motion of defendant First Security Casualty Co., ("First Security" or "defendant") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be denied.[1]

I. FACTUAL SUMMARY[2]

Plaintiff, Gary W. Cruickshank ("Cruickshank"), is the trustee in bankruptcy of Precise Engineering, Inc. ("Precise"). (Compl.). This case arises from events surrounding an earlier civil lawsuit ("underlying suit") tried in May 1992 in the Circuit Court of Jefferson County, Alabama in which Precise was the defendant. (Compl. at ¶ 7). The plaintiff in the underlying suit, Christopher LaCombe ("LaCombe"), was injured when he fell off of a scaffold, in Jefferson

---

[1] This motion was orally denied before trial.

[2] The facts contained within this summary have been taken, for the most part, from the court's March 29, 1996 Memorandum Opinion in which the court denied defendant's Motions to Dismiss and to Transfer Venue.

County, Alabama that was made from pump-jacks manufactured by Precise. (*Id.* at ¶ 6). LaCombe sued Precise and others for damages resulting from the scaffold incident.

At the time of LaCombe's injury, First Security Casualty Company ("First Security") provided liability coverage to Precise under a policy of commercial general liability insurance (the "Policy"). (*Id.* at ¶ 8). The Policy had a "General Aggregate Limit" of one million dollars, ($1,000,000), and an "Each Occurrence Limit of $1,000,000." (*Id.*). When the underlying suit began, however, the maximum amount of coverage available to Precise under the Policy had been reduced to approximately nine hundred thousand dollars, ($900,000), as the result of payments previously made on behalf of Precise in other matters. (*Id.* at ¶ 13).

Pursuant to the Policy, First Security defended Precise in the underlying suit. *Id.* ¶ 9. First Security employed counsel in Birmingham and directed Precise's defense. *Id.* Additionally, First Security's Vice President of Claims, Raymond D. Watts ("Watts") was present in Birmingham during the trial. (*See* First Watts Aff. at ¶ 1; Def.'s Reply Br. to Pl.'s Opp'n to Mot. to Dismiss or, in the Alternative, to Transfer Venue at 10 (hereinafter (Mot. to Dismiss/Transfer)).[3] Before and during the trial, Mr. LaCombe offered to settle his claims against Precise for amounts that were within the remaining Policy limit. (Compl. at ¶ 14). First Security refused each of LaCombe's settlement demands. (*Id.* at ¶ 15). Ultimately, the jury returned a verdict and judgment against Precise in the amount of two million seven hundred thousand dollars, ($2,700,000), more than one million eight hundred thousand dollars ($1,800,000) in excess of the

---

[3] While the pleadings do not explicitly indicate Watts's presence in Alabama, First Security has acknowledged that Watts was in Birmingham during the LaCombe trial.

2

amount then available under the Policy. (*Id.* at ¶¶ 16-17). On appeal, the Alabama Supreme Court affirmed the judgment. (*Id.* ¶ 16).

On June 10, 1994, First Security filed a complaint against Precise in a Massachusetts state court seeking a declaratory judgment that it had: "(1) performed all of its obligations, pursuant to the policy of insurance issued to defendant Precise; (2) exhausted its policy limits; (3) acted in good faith in its defense of Precise in the Alabama litigation; (4) acted with reasonable care in the defense of Precise in the Alabama litigation; (5) kept Precise fully informed and gave proper consideration to the possible uninsured exposure of Precise in the Alabama litigation." (First Am. to Mot. to Dismiss/Transfer Exh. B at 2). Precise did not file an answer or motion in the Massachusetts state court case instigated by First Security, and, apparently, ceased its business operations sometime in 1992. (*See id.* Exh. C).[4] No judgment has been entered by the Massachusetts state court. *Id.*

The United States Bankruptcy Court for the District of Massachusetts entered an Order for Relief on February 7, 1995 adjudicating Precise to be bankrupt pursuant to Chapter 7 of the United States Bankruptcy Code. (Compl. at ¶ 19; Cruickshank Aff. at ¶ 2). Plaintiff was appointed as the Trustee in Bankruptcy on February 10, 1995. (Compl. at ¶ 19; Cruickshank Aff. at ¶ 2). First Security appeared through counsel in the bankruptcy proceeding in February 1995, but did not notify plaintiff, as Precise's trustee, about the complaint filed in the Massachusetts state court. (Cruickshank Aff. at ¶ 5.) Cruickshank first learned about the state court filing when First Security moved to dismiss the action in this court. (Cruickshank Aff. at ¶ 4.) The Bank-

---

[4] The Affidavit of Alan Holmes filed by First Security indicates that Precise began selling its assets in 1992. (Holmes Aff.).

ruptcy Code's automatic stay provision has barred activity in the Massachusetts state court action since the commencement of the bankruptcy proceeding. (*See* 11 U.S.C. § 362(a) (1994); *see* Cruickshank Aff. at ¶ 6).

On June 6, 1995, Cruickshank filed his complaint in this court and asserted claims against First Security for negligent and bad faith failure to settle the underlying suit. On November 22, 1996, defendant filed the Motion for Summary Judgment that is presently before the court. Having received briefs and heard oral argument on the issues raised in defendants motion, this matter is now ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

In its Motion for Summary Judgment and during oral argument, defendant raised the following arguments in support of its position that the court should grant summary judgment: (1) plaintiff is prevented from pursuing his claims because he filed suit beyond the statute of limitations; (2) Massachusetts or Michigan law applies to this dispute, and under Massachusetts and Michigan law plaintiff's claims fail; (3) plaintiff has not presented substantial evidence to support his negligent failure to settle claim;(4) plaintiff has not presented substantial evidence to support his bad faith failure to settle claim; and (5) amounts

paid by Kingsberry Homes to Chris LaCombe constitute a satisfaction of the judgment against Precise, or, at the very least, a set off. The court now turns to a discussion of each of these issues.

### A. Did Plaintiff File Suit Beyond the Applicable Statute of Limitations?

In the case at bar, both parties agree that under Alabama law, claims for negligent or bad faith failure to settle are subject to the general, two year statute of limitations. ALA. CODE § 6-2-38(l). Defendant maintains, however, that the statue began to run, at the latest, on September 18, 1992, the date the post trial motions were denied by operation of law. Plaintiff, on the other hand, contends that the statue of limitations did not accrue until June 18, 1993, the day on which the Alabama Supreme Court affirmed the underlying judgment against Precise. The court agrees with plaintiff's position on this issue.

In *Hartford Accident & Indemnity Co. v. Cosby*, 173 So. 2d 585 (Ala. 1965), the plaintiff insured brought suit against his insurance company alleging, inter alia, that the insurance company negligently failed to settle a claim brought against the insured in an underlying lawsuit by Carrie Smith and others. On appeal, the insurance company defendant argued that the suit was barred because it was filed outside the applicable statute of limitations. *Id.* at 589. The resolution of the issue ultimately depended upon whether the statute of limitations began to run, as defendant argued, on the day the judgment in the underlying case was entered, or on the date of the final affirmance in the underlying case. The court disagreed with defendant's position, and held that "the statute of limitations did not begin to run until the final affirmance of the judgment in the Carrie Smith case by this court." *Id.* at 590. In reaching this conclusion the court reasoned:

6

> On appeal the judgment in the Carrie Smith case was subject to being affirmed, or reversed, or affirmed upon condition of a remittitur by the plaintiffs. It was only upon the contingency of an unconditional affirmance that it could be said that there had been an invasion of Cosby's rights which were necessarily injurious to him. Had the case been reversed or had a remittitur been ordered reducing the amount of the Carrie Smith judgment to within the policy limits, no cause of action would then have been possessed by this appellee.

*Id.*

Similarly, in *Boyd Bros. Transp. Co., Inc. v. Fireman's Fund Ins.*, 540 F. Supp. 579 (N.D. Ala. 1982), *aff'd* 729 F.2d 1407 (11th Cir. 1984), the court faced the issue of whether an action against an insurer for negligent or bad faith refusal to settle within the policy limits accrued on the day judgment was entered in the underlying litigation, or on the day in which the underlying litigation became final. The court in *Boyd* found that "[c]learly the cause of action does not accrue until the litigation is over because the insured has not been injured until there is a final judgment for damages in excess of the policy limits." *Id.* at 582 (citation omitted). *See also American Mut. Liability Ins. Co. v. Cooper*, 61 F.2d 446, *cert. denied*, 289 U.S. 736 (1932).

To counter this adverse and controlling precedent, defendant relies upon the more recent Eleventh Circuit case of *Industrial Chem. & Fiberglass v. North River Ins.*, 908 F.2d 825 (11th Cir. 1990). In *Industrial Chem.*, the Eleventh Circuit discussed, inter alia, the point in time at which a cause of action for negligent failure to settle begins to accrue. In the context of this discussion, the court stated that "Industrial Chemical suffered a compensable loss under Alabama law when the jury returned a verdict in excess of the Centennial policy limit. Liability on the judgment, not payment of the judgment, creates the right of action

7

against an insurer who wrongfully failed to settle." *Id.* at 831 (citations omitted). Additionally, the court noted that it was "aware of no authority that holds that an insured must exhaust his appellate remedies (at his own or a third party's expense) before he has a claim against an insurer for failure to settle." *Id.* at 832.

In the present case, while the cases the court relies upon to support its holding on this issue appear to be inconsistent with the holding in *Industrial Chem.*, a closer look reveals that they these cases are, in fact, reconcilable. In *Industrial Chem.*, unlike the cases the court relies upon, the insurer withdrew from defending the insured, and abandoned all efforts to reduce the size of the excess judgment by tendering its defense to another insurance company. *Id.* at 832. In footnote six of the *Industrial Chem.* opinion, the court acknowledged this crucial and distinguishing point by declining to overrule a previous case in which the Eleventh Circuit held that a cause of action for bad faith failure to settle does not begin to accrue until the judgment is affirmed for the final time. *Id.* at 832 n.6 (distinguishing *Romano v. American Cas. Co.*, 834 F.2d 968 (11th Cir. 1987)). In making this distinction, the court stated that *Romano* . . . , is distinguishable from the present case because [in the present case,] Centennial abandoned all effort to reduce the size of the excess judgment when it tendered its defense to Hartford. *Id.*

Although the court in *Industrial Chem.* did not give a reason for distinguishing between cases in which the insurer abandons the insured and cases in which it does not, the justification for making such a distinction could stem from a practical concern that was identified by the court in *Boyd*. Specifically, in *Boyd*, the court noted that in cases in which the insurer does not abandon the insured,

8

> courts should not impose on the insured the Hobson's choice of
> (1) instituting legal actions against an insurer for the negligence
> of counsel while the insured is still depending on that counsel for
> the conduct of all or part of the remaining third-party litigation,
> or (2) relinquishing his claim by allowing it to become time-
> barred.

*Boyd Bros. Transp. Co., Inc.*, 540 F. Supp. at 583 (footnote omitted). In cases like *Industrial Chem*, however, an insured would not be faced with such a "Hobson's choice." Because the court finds this justification persuasive, the court holds that when the insurer does not abandon the insured prior to the final affirmance of the judgment, the statute of limitations does not begin to run until the judgment is affirmed for the final time.[5]

In the present case, the Alabama Supreme Court affirmed the underlying judgment against Precise on June 18, 1993. On June 6, 1995, plaintiff filed suit in this court. Because the statute of limitations did not begin to run until the affirmance by the Alabama Supreme Court, and because plaintiff filed suit within two years of this date, the court holds that plaintiff did not file suit beyond the two year statute of limitations.

### B. Which Law Applies to this Dispute?

"An action by an insured against its insurer alleging negligence or bad faith in settling a third party claim is a tort claim . . . ." *Dumas v. Southern Guar. Ins. Co.*, 408 So. 2d 86, 88 (Ala. 1981). In Alabama, "the traditional conflicts rule of *lex loci delicti* applies to tort actions

---

[5] In its Reply Brief, defendant argues that the cases relied upon by plaintiff regarding this issue are distinguishable because, in each of those cases, a supersedeas bond was filed, and during the pendency of the appeal, the insured/appellant's assets could not be levied against. (Def's Reply Br. to Pl.'s Opp'n to Def's Br. in Supp. of Summ. J. at 1.) While most, but not all, of the cases plaintiff relies upon mention that a supersedeas bond was filed, the filing of such bond was not tied to the ultimate outcome in any of those cases.

9

brought in this state." *Abercrombie v. Nashville Auto Auction*, 541 So. 2d 516, 518 n.1 (Ala. 1989) (citation omitted). "Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Id.*

In the present case, defendant argues that the injury, if any, occurred in Massachusetts, the place where Precise had its assets, or in Michigan, the location where the decision not to settle was made. The court finds these arguments unpersuasive. First, even though Precise's assets were located in Massachusetts, generally, "an injury is proper where a wrongful act was committed, not where the damage resulted." *Ex Parte Southtrust Bank*, 619 So. 2d 1356, 1358 (Ala. 1993). Second, with respect to Michigan, even if the court accepts defendant's contention that the decision not to settle the LaCombe lawsuit was made in Michigan, defendant's act or omission in failing to settle, which is the subject of this dispute, occurred here in Alabama. It is undisputed that plaintiff's complaint was filed in the Circuit Court of Jefferson County, Alabama, the trial was conducted in Alabama, both parties made settlement offers in Alabama, and the affirmance of the judgment which ultimately gave rise to the claims of Precise occurred in Alabama. Thus, the court concludes that based upon the totality of circumstances, because the conduct that forms the basis of plaintiff's allegations took place in Alabama, the law of Alabama applies.

### C. Plaintiff's Negligent Failure to Settle Claim

Defendant argues that plaintiff's negligent failure to settle claim should be dismissed because plaintiff has failed to present substantial evidence that defendant acted negligently. "'Negligence is the failure to do what a reasonably prudent insurance company would have

done under the same or similar circumstances or the doing of something which a reasonably prudent insurance company would not have done under the same or similar circumstances . . . .'" *Carrier Express, Inc. v. Home Indem. Co.*, 860 F. Supp. 1465, 1479 (N.D. Ala. 1994) (citation omitted). Thus, in order to withstand defendant's motion for summary judgment, plaintiff must demonstrate that a genuine issue of material fact exists with respect to whether First Security exercised ordinary care in failing to settle LaCombe's claims within the limits of the policy. In the court's view, plaintiff has satisfied his burden.

While both sides have presented persuasive arguments regarding their respective positions, the court is compelled to mention a few points raised by plaintiff that create a genuine issue of material fact with respect to plaintiff's negligent failure to settle claim. First, plaintiff's retained expert, W. Lee Pittman ("Pittman"), submitted a report in which he opined that "First Security, as Precise's liability insurer, acted unreasonably and violated the applicable standard of care in failing to protect its insured by settling the LaCombe case within policy limits." (Pl.'s Ex. 1 to Pittman Dep. at 4, attached at Tab F to Pl.'s Evid. Materials in Opp'n to Def.'s Mot. for Summ. J.) Pittman based his opinion on, inter alia, a number of "red flags" that, he maintains, "should have alerted an insurance company to the danger facing its insured if the case was not settled." (*Id.* at 5.) One of the "red flags" to which Pittman refers are the "evaluations of the case by First Security's own attorneys in Alabama." (*Id.*)

Specifically, in a November 1, 1991 memorandum from Charles Kelley ("Kelley"), one of the attorneys retained by First Security to represent Precise, to Raymond Watts ("Watts"), Claims Manager of First Security, Mr. Kelley stated that Mr. LaCombe makes a sympathetic witness, the case had a possible verdict range of between $750,000.00 and $900,000.00, and

11

that Precise's chances of winning the case outright were approximately thirty to forty percent, meaning that its chances of losing were sixty to seventy percent. (Pl.'s Ex. 69 to Watts Dep. at 3 & 8, attached at Tab A to Pl.'s Evid. Materials in Opp'n to Def.'s Mot. for Summ. J.) Moreover, in an April 30, 1992 letter from Kelley to Watts, Kelley stated that "if a jury returns a verdict for the plaintiff in this case, it will be in the high six figure range, and possibly more. Plaintiff's injuries were so severe and his lifestyle has been affected to such an extent that a verdict for $750,000 - $1 million is not highly unlikely." (Pl.'s Ex. 82 to Watts Dep. at 2, attached at Tab A to Pl.'s Evid. Materials in Opp'n to Def.'s Mot. for Summ. J.) Furthermore, he also noted that "juries in this area quite often discount or even disregard the conduct of a plaintiff in work related accidents." (*Id.*) Consequently, based on the foregoing and other evidence of record, the court holds that a genuine issue of material fact exists with respect to plaintiff's allegation that defendant negligently failed to settle the underlying suit brought by LaCombe.

### D. Plaintiff's Bad Faith Failure to Settle Claim

As with plaintiff's negligent failure to settle claim, defendant also argues that plaintiff failed to present substantial evidence on his bad faith failure to settle claim. After a review of the evidence, the court disagrees.

In *Carrier Express, Inc.*, 860 F. Supp. at 1479, Judge Guin discussed what constitutes a bad faith failure to settle: "Bad faith is more culpable that negligent conduct." It "embraces more than bad judgment or negligence and imports dishonest purpose, conscious wrongdoing,

12

breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.*[6]

In *Carrier*, the court outlined a number of factors that are relevant to the bad faith inquiry. In an attempt to avoid summary judgment, plaintiff argues that, in the present case, a genuine issue of material fact exists for most, if not all, of the *Carrier* factors. The court agrees, but will only discuss a few of the *Carrier* factors that the court finds particularly probative in the case at bar. First, as noted in the section of this Opinion discussing plaintiff's negligence claim, Charles Kelley wrote to Raymond Watts on at least two occasions in which he evaluated LaCombe's claims. Although these letters contained statements indicating that Precise's chances of winning the case outright were approximately thirty to forty percent, and that a verdict of $1 million would not be highly unlikely, these documents do not contain any notation indicating that copies of these letters were sent to Precise. In addition, there is no evidence that First Security forwarded copies of these letters to Precise. The absence of such evidence, raises a genuine issue with respect to whether First Security kept Precise advised of relevant facts and developments. Additionally, as pointed out by plaintiff, in the LaCombe suit, First Security was reinsured on any potential losses over $100,000, raising a genuine issue regarding two of the *Carrier* factors: (1) whether First Security's decision not to settle within the policy limits related to reinsurance; and (2) whether the amount of risk to Precise if the case were not settled was disproportionately large when compared to the risk to First Security. Finally, as to the eighth *Carrier* factor, it is undisputed that there were opportunities

---

[6] Judge Guin adopted a definition of bad faith that was outlined in jury charges given by Judge Edwin Nelson in a bad faith failure to settle case.

to settle within the policy limits. Consequently, because the court is of the opinion that genuine issues of material fact exist with respect to plaintiff's bad faith failure to settle claim, summary judgment on this issue will be denied.

### E. Should Precise and Kingsberry Homes Be Considered Joint Tortfeasors?

As an independent justification for its Motion for Summary Judgment, defendant argues that amounts paid by Kingsberry Homes constitute either a complete or partial satisfaction of the judgment against Precise. The court disagrees.

In support of its position on this issue, defendant cites the following cases: *Shepherd v. Maritime Overseas Corp.*, 614 So. 2d 1048 (Ala. 1993); *Cooper v. Alpin*, 523 So. 2d 339 (Ala. 1988); *General Motors Corp. v. Edwards*, 482 So. 2d 1176 (Ala. 1985); *Vanguard Indus. Corp. v. Alabama Power Co.*, 455 So. 2d 837 (Ala. 1984); *Butler v. GAB Business Services, Inc.*, 416 So. 2d 984 (Ala. 1982); *Maddox v. Druid City Hosp. Bd.*, 357 So. 2d 974 (Ala. 1978). Although each of these cases involves different factual scenarios, each stands for, inter alia, the well-established principle that "[i]f a plaintiff recovers judgment against one joint tort-feasor and obtains satisfaction of that judgment, this operates as a discharge of the other joint tort-feasor." *Butler* 416 So. 2d at 986. Defendant argues that because Precise and Kingsberry Homes are joint-tortfeasors, the amounts "paid by Kingsberry Homes constitute either a satisfaction of the judgment against Precise or, at the very least, a set off." (Def.'s Br. in Supp. of Mot. for Summ. J. at 7.) The flaw with this argument is that Precise and Kingsberry are not joint-tortfeasors.

In *Shepherd*, the Alabama Supreme Court discussed the circumstances under which two or more defendants could be considered joint tort-feasors. Specifically, "'[w]here one has

14

received an injury at the hands of two or more persons acting in concert, or acting independently of each other, if their acts unite in causing a **single injury**, all of the wrongdoers are liable for damages occasioned by the injury.' It is also manifest that this **single injury**, in itself or of itself, indivisibly constitutes an indivisible cause of action." *Sheperd*, 614 So. 2d at 1050 (emphasis added) (citations omitted).

In the underlying suit, however, plaintiff LaCombe alleged more than a **single injury**. He alleged that "[t]he negligence of the defendants, independently and concurring, proximately caused plaintiff's injuries, as previously described, **or** caused plaintiff to be without workmen's compensation insurance to pay his medical expenses." (LaCombe Compl. at ¶ 27). From this language, defendant argues that Precise and Kingsberry were sued as joint tortfeasors for damages stemming from the injuries LaCombe received in the fall. Plaintiff counters by arguing that the LaCombe complaint alleges that the conduct of Kingsberry and Precise constituted separate acts that resulted in separate injuries. First, paragraph twenty of the LaCombe complaint states that "Kingsberry . . . was negligent in representing . . . that Graham carried workmen's compensation insurance covering plaintiff and other workmen." Second, paragraph twenty-three of that same complaint alleges that "[d]efendants "H" and "I" were negligent in their manufacture and distribution of the jacks described herein."[7] In his Brief in Opposition to Defendant's Motion for Summary Judgment, plaintiff argues that "Precise had nothing to do with Kingsberry's representation, which occurred at a totally separate place and time from Precise's own tortious conduct." (*Id.* at 18.) The court agrees

---

[7] At oral argument, the court learned that at some point in the underlying litigation, LaCombe substituted Precise for defendant "H."

with plaintiff's position. While LaCombe's attorney could have crafted a more artfully drafted pleading, the insertion of the word "or," along with the other allegations in the complaint, is sufficient to convince the court that plaintiff's complaint alleges more than a single injury, making defendant's argument that Precise and Kingsberry were joint tort-feasors untenable. Thus, because "non-joint tort-feasors whose acts do not combine to cause one single injury cannot claim a set-off as a matter of law of any amount received by the plaintiff in settlement with other non-joint tort-feasor defendants based on distinct acts of those defendants," *Ex parte Martin*, 598 So. 2d 1381, 1385 (Ala. 1992), defendant's argument regarding this issue must fail.

## IV. CONCLUSION

Based upon the foregoing analysis, the court holds that there are genuine issues of material fact and defendant is not entitled to judgment as a matter of law. An Order denying defendant's Motion for Summary Judgment shall be entered contemporaneously herewith.

DONE this 18th day of April, 1997.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge