FILED

'97 APR 18 PM 4:09

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

APR 18 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY CRUICKSHANK, Trustee in }
Bankruptcy of Precise Eng., Inc., }
                                  }
        Plaintiff,                }
                                  }    CASE NO. CV 95-B-1440-S
v.                                }
                                  }
FIRST SECURITY CASUALTY CO.,      }
                                  }
        Defendant.                }

## MEMORANDUM OPINION

This matter is before the court on the motion of defendant First Security Casualty Company ("First Security") to disqualify plaintiff's counsel Larry B. Childs ("Childs"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be denied.[1]

## DISCUSSION

In its motion, defendant contends that Childs should be disqualified from the position of plaintiff's counsel in the present litigation pursuant to Alabama Rules of Professional Conduct 1.7 and 3.7, respectively. First, regarding Rule 1.7, defendant argues that Child's representation of Precise's trustee in Bankruptcy, Gary Cruickshank ("Cruickshank"), and continued representation of Christopher LaCombe ("LaCombe") creates a conflict of interest that warrants Child's disqualification under Rule 1.7. Second, defendant argues that Rule 3.7

---

[1] This motion was orally denied prior to the trial. Although the court has not modified the opinion it prepared before trial to discuss developments during the trial, having heard the testimony at trial, the court is even more persuaded that the decision to deny defendant's motion to disqualify was correct.

133

prohibits Childs from acting as plaintiff's counsel because Childs is likely to be a necessary witness at trial.

In a motion to disqualify the burden rests with the party seeking disqualification. *Moyroud v. Itek Corp.*, 528 F. Supp. 707 (S.D. Fla. 1981). Such motions "'should be reviewed with extreme caution for they can be misused as a technique[] of harassment.'" *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed. Cir. 1984). "The right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances." *Chapman Engineers v. Natural Gas Sales Co.*, 766 F. Supp. 949 (D. Kan. 1991) (citing *Panduit*, 744 F.2d at 1577).

### A. Disqualification Under Alabama Rule of Professional Conduct 1.7

In relevant part, Alabama Rule of Professional Conduct 1.7(b) provides that "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client . . . unless: (1) The lawyer reasonably believes the representation will not be adversely affected; and (2) The client consents after consultation."[2]

In the present case, defendant argues that Childs' representation of Cruickshank will be materially limited by his continued representation of LaCombe. More specifically, defendant argues that as a trustee in bankruptcy, Cruickshank has the responsibility of reducing the

---

[2] The comments to Rule 1.7 state that "[w]here the conflict is such as clearly to call into question the fair or efficient administration of justice, opposing counsel may properly raise the question." (*See* section entitled "Conflict Charged by an Opposing Party"). Thus, in order to address the merits of defendant's arguments, the court assumes without deciding, that the conflict alleged in the case at bar clearly calls "into question the fair or efficient administration of justice."

2

indebtedness of Precise and protecting the interest of all creditors. To discharge these functions, it is necessary for Cruickshank and his attorneys to determine all monies received by creditors of Precise in satisfaction of any portion of the amount owed to said creditor by Precise. This will enable Precise to obtain either a satisfaction of that debt or to set off that amount from the total debt owed that particular creditor in order to prevent a double recovery by one creditor at the expense of other creditors. Defendant further argues that as a continued representative of LaCombe, Childs has the obligation to secure the largest recovery possible for his personal injuries, which will require Childs to argue that amounts received by LaCombe from other parties should not reduce the amount of money LaCombe should receive from Precise.

Defendant's argument on this issue is not without context. It is undisputed that Kingsberry Homes ("Kingsberry"), one of the defendants in the underlying litigation, agreed to pay LaCombe amounts in excess of $500,000.00 in settlement of LaCombe's claims against Kingsberry. In its Motion for Summary Judgment, defendant argued that because Kingsberry and Precise were sued as joint tort-feasors, the money paid by Kingsberry served either as a satisfaction, or at least a set-off, of the judgment against Precise. Thus, according to defendant, a conflict exists between Childs' alleged obligation to Cruickshank to reduce amounts that can be characterized as a satisfaction of LaCombe's judgment against Precise, and his obligation to LaCombe to obtain the largest possible recovery. In support of its argument, defendant cites Cruickshank's deposition testimony in which he stated that he was not aware of any other amounts that have been collected by LaCombe for claims LaCombe

made against Precise and other defendants. (Def.'s Mot to Disqualify at 3 (citing Cruickshank Dep. at 64-65)).

Defendant's argument hinges entirely on a holding by the court that Precise and Kingsberry were sued as joint tort-feasors. In the Memorandum Opinion denying defendant's Motion for Summary Judgment, the court addressed the issue of whether Precise and Kingsberry were sued as joint tort-feasors. In rejecting defendant's argument regarding this issue, the court held that the acts of Precise and Kingsberry did not combine to cause a single injury, making defendant's argument that Precise and Kingsberry were joint tort-feasors untenable. Because Precise and Kingsberry are not joint tort-feasors, Cruickshank would be unable to argue that amounts paid by Kingsberry to LaCombe constitute either a complete satisfaction or a partial set off of the judgment against Precise. Thus, defendant's argument that Childs should be disqualified because of a conflict of interest is without merit and defendant's motion to disqualify Childs pursuant to Rule 1.7 is due to be denied.[3]

### B. Disqualification Under Alabama Rule of Professional Conduct 3.7

Under Alabama Rule of Professional Conduct 3.7(a), "[a] lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness, except where: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or (3) Disqualification of the lawyer would work

---

[3] Defendant also argues that Childs should be disqualified because he failed to disclose that he represents an "adverse interest" as required by 11 U.S.C. § 327 and Bankruptcy Rule 2014. The court's holding that Precise and Kingsberry are not joint tort-feasors also serves to defeat defendant's "adverse interest" argument, and therefore, the court need not address this argument.

4

substantial hardship on the client." Because defendant maintains that Childs is likely to be called as witness, the issue the court must address is whether Childs is a necessary witness.

In *OMI Holdings, Inc. v. Chubb Ins. Co. of Canada*, No. CIV.A.95-2519-KHV, 1996 WL 772586 (D. Kan. Nov. 22, 1996), the court adopted a three part test to determine whether disqualification of an attorney is warranted under Rule 3.7. "The party moving to disqualify must establish (1) that the attorney will give evidence material to the determination of the issues being litigated; (2) that the evidence cannot be obtained elsewhere; and (3) that the testimony is prejudicial to the testifying attorney's client." *Id.* at *2 (citation omitted).

In the present case, defendant contends that Childs is a necessary witness as to the following issues: (1) Childs was the only lawyer who dealt with Precise or its representative in an effort to buy the stock of Precise for LaCombe's father; (2) Childs will have to testify that as of August 11, 1994, he knew that Edith Fischer was the person to whom Precise's counsel was tendering the offer made by Childs to purchase the stock of Precise; (3) Childs will have to testify regarding his factual observations and analysis of the merits of the underlying case; and (4) Childs must testify to the fact that Edith Fischer was authorized to sell the stock of Precise, but refused. (Def.'s Submission in Reply to Pl.'s Response to Mot. to Disqualify at 11-14).

First, with respect to defendant's contention that Childs was the only lawyer who dealt with Precise or its representative in an effort to buy the stock of Precise for LaCombe's father, the court holds that defendant has failed to demonstrate that this testimony is material, and, more importantly, that Childs is the only one who can proffer this testimony. To support its point regarding this testimony, defendant cites a memo written to the file by Childs on August

5

11, 1994. In his memo, Childs stated that he spoke with Roger Soderberg, and Soderberg reported that he had discussed LaCombe's proposal to purchase the stock of Precise with Edith Fischer ("Fischer"), and that Fischer has been unable to make up her mind. (Ex. 18 attached to Def.'s Submission in Reply to Pl.'s Response to Mot. to Disqualify). The refusal of Precise to sell the stock may have some marginal relevance to whether First Security acted negligently or in bad faith.[4] However, the August 11, 1994 memo does not indicate that there **was** a refusal by Fischer or Precise to sell Precise's stock, but instead states that Fischer was unable to make up her mind. Even if defendant intended to call Childs to testify that Fischer refused to sell the stock, defendant has not demonstrated the second element of the three part test, that the evidence cannot be obtained elsewhere. As the memo indicates, Childs spoke with Roger Soderberg regarding LaCombe's proposal to purchase the stock of Precise. Thus, the testimony that Fischer was reluctant to sell the stock could be proffered by either Soderberg or Fischer, which defeats defendant's argument that Childs is a necessary witness on this point.

As a second justification for calling Childs as a witness, defendant argues that Childs will have to testify that as of August 11, 1994, he knew that Edith Fischer was the person to whom Precise's counsel was tendering the offer made by Childs to purchase the stock of Precise. Defendant contends that this testimony is relevant because in a Motion in Limine to exclude the deposition testimony of Edith Fischer, Childs and Randy Quarles ("Quarles") took the position that '"the record is devoid of any evidence that Edith Fischer was authorized by

---

[4] The only possible relevance of this testimony would be to allow defendant to argue that because the Fishers did not sell the stock, Edith Fisher was personally satisfied with the decision not to settle the LaCombe lawsuit and did not want to sue First Security. Without more facts, one must speculate in order to make that inference.

6

Precise to speak for the corporation, nor is there any evidence that the corporation adopted any of her statements.'" (Def.'s Submission in Reply to Pl.'s Response to Mot. to Disqualify at 11 (citing Pl.'s Mot. in Limine at ¶ 2b). Apparently, defendant intends to call Childs to the stand to establish that as of August 11, 1994, the day Childs wrote the memo to the file regarding his conversations with Soderberg, Childs knew that Fischer was allowed to speak for Precise.

In granting plaintiff's renewed motion to preclude the deposition of Edith Fisher, the court determined that defendant has not established Mrs. Fisher's authority to speak for Precise and the fact that Childs' offers to buy the stock of Precise were tendered to Fischer can be testified to by other witnesses, including Soderberg or Fisher. Thus, for the reasons stated, defendant has not sustained its burden with respect to this testimony.

In addition, defendant maintains that Childs will be required to testify to the fact that Mrs. Fischer refused to sell the stock. Defendant argues that Childs' testimony on this issue goes directly to the ninth and tenth *Carrier* factors: (1) whether Precise requested settlement within the policy limits; and (2) whether First Security failed to keep Precise advised of relevant facts and developments. Childs' testimony regarding Fischer's "refusal" to sell the stock is only marginally relevant to either of these *Carrier* factors. (*See supra* note 4). Nevertheless, defendant has failed to establish that Childs is the only one able to provide this testimony. As stated earlier in this Opinion, the August 11, 1994 memo written by Childs to the file suggests that Roger Soderberg could offer this same testimony. Consequently, the court holds that defendant has failed to establish its burden with respect to this issue.

Turning to the third category of testimony that defendant claims renders Childs a necessary witness, defendant contends that it will call Childs to testify as to his observations

7

and analysis of the merits of the underlying case. Additionally, defendant maintains that Childs differs in what he remembers telling LaCombe about the possibilities of settlement from what LaCombe remembers being told by Childs. Even if such evidence were material, defendant has failed to establish the third prong of the three- part test, that Childs' testimony will be prejudicial to his client. *OMI Holdings, Inc. v. Chubb Ins. Co. of Canada*, No. CIV.A.95-2519-KHV, 1996 WL 772586, at *2 (D. Kan. Nov. 22, 1996) (citation omitted). Certainly, if Childs is called to the stand and questioned about his observations and analysis of the merits of LaCombe's case, his testimony would be favorable to Cruickshank.

      Additionally, as to defendant's contention that Childs differs in what he remembers telling LaCombe about the possibility of settlement from what LaCombe remembers being told by Childs, the court concludes that no such difference exists. Although defendant cites excerpts from LaCombe's deposition to support its position on this issue, a review of the cited deposition testimony reveals that LaCombe has no recollection of ever communicating with Childs, much less communicating with him about the possibility of settlement. (*See* LaCombe Dep. at 51-52, attached as Ex. 13 to Def.'s Submission in Reply to Pl.'s Response to Mot. to Disqualify). As to what Childs remembers telling LaCombe, in his deposition Childs stated:

> I believe that I told Mr LaCombe that I thought that in his area juries historically had been generous with people who had suffered serious injuries, especially if the injury was suffered while they were doing their jobs. And I believe that I told Mr. LaCombe in response to his question about what I thought the case might settle for if it settled, that I thought it would be hundreds of thousands of dollars. I don't believe I ever gave him any more specific figure than hundreds of thousands of dollars.

(Childs Dep. at 130-31). Thus, because the record does not support the distinction defendant attempts to make regarding what Childs remembers telling LaCombe and what LaCombe remembers being told, the court holds that defendant has failed to meet its burden of establishing the necessity of Childs' testimony on this issue.

## CONCLUSION

For the foregoing reasons, the court holds that defendant's Motion to Disqualify Plaintiff's Counsel Larry B. Childs is due to be denied. An Order denying defendant's motion shall be entered contemporaneously herewith.

DONE this 18th day of April, 1997.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge