IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
98 JAN -7 PM 3:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

GARY W. CRUICKSHANK, )
Trustee in Bankruptcy of Precise )
Engineering, Inc. )
 )
 )
        Plaintiff, ) CIVIL ACTION NO.
 )
v. ) CV-95-B-1440-S
 )
FIRST SECURITY CASUALTY )
COMPANY, )
 )
        Defendant. )

ENTERED
JAN 7 1998

## MEMORANDUM OPINION

This matter is before the court on the Renewed Motion to Dismiss (the "Renewed Motion") filed by defendant First Security Casualty Company ("First Security" or "defendant"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be denied.[1]

### DISCUSSION

The Renewed Motion again contends that the court lacks personal jurisdiction over First Security. First Security initially asserted this jurisdictional

---

[1] The court is adopting verbatim the Memorandum Opinion proposed by plaintiff's counsel. The Opinion reflects the court's oral findings to counsel at the hearing on the defendant's Renewed Motion to Dismiss. The Opinion also reflects the court's own recollection as to the testimony of witnesses Watts and Kelley in the trial of this action.

150

argument in a motion filed in July 1995, which the court denied by an order entered on March 29, 1996. The Renewed Motion, coming as it does *after* the trial of this case, is an extraordinary vehicle with which to seek reconsideration of the earlier order. Nevertheless, because First Security also has reiterated its jurisdictional contentions in its separately filed motion for judgment notwithstanding the verdict, the court considers the issue to be properly before it.

For the most part, the Renewed Motion simply repeats the arguments which First Security advanced in support of its first jurisdictional motion. In denying that motion, the court determined that plaintiff Gary W. Cruickshank ("Cruickshank"), Trustee in Bankruptcy for Precise Engineering, Inc. ("Precise"), had established a prima facie case of jurisdiction sufficient to defeat the motion.[2]

---

[2] Where no evidentiary hearing is conducted in connection with a motion to dismiss for lack of personal jurisdiction, the plaintiff need establish only a prima face case of jurisdiction to defeat the motion. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). A plaintiff satisfies this burden by presenting evidence sufficient to defeat a motion for directed verdict. *Morris*, 843 F.2d at 492. Allegations of the complaint must be construed as true to the extent that they are uncontroverted by the defendant's affidavits or deposition testimony. *Id.* If the parties' evidence conflicts, "the court must construe all reasonable inferences in favor of the non-movant plaintiff." *Id.* First Security did not request an evidentiary hearing in connection with its motion to dismiss, and no such hearing was conducted. The record before the court showed that (1) First Security undertook the defense of its insured, Precise, in a state court in Birmingham, Alabama; (2) the insurance policy issued by First Security to Precise contained a territory-of-coverage provision that included Alabama along with the rest of the United States, Puerto Rico and Canada; (3) First Security's claims manager, Raymond Watts ("Watts"), was in Birmingham during the trial, which spanned more than a week in May 1992; (4) Watts was a member of a First Security claims committee, which decided not
(continued...)

The court sees no need to rehash the same arguments and conclusions in detail here. Nothing has been presented to the court that would dictate a different result. To the contrary, evidence presented during the trial of this case further establishes that First Security is subject to the court's jurisdiction as a result of its negligence in refusing to settle a lawsuit in this state against its insured, Precise.

Among other things, testimony at trial emphasized First Security's physical presence and purposeful activities in Alabama in connection with the lawsuit against Precise. Watts, First Security's senior claims official, testified that, in telephone calls he made while he was here in Birmingham during the trial of the Precise lawsuit, he jointly decided with another First Security executive in Michigan to reject certain settlement demands and then to cap any offer on behalf of Precise at no more than $250,000. Additionally, Charles J. Kelley ("Kelley"), the lead lawyer retained by First Security to represent Precise in Birmingham, testified that Watts had said he brought $250,000 in settlement authority with him to Birmingham. The evidence at trial demonstrated that $250,000 in authority

---

[2]/(...continued)
to accept demands to settle the Alabama lawsuit within Precise's policy limit; (5) the settlement demands were rejected by counsel in Birmingham retained by First Security; (6) Watts, while in Birmingham, instructed the counsel retained by his company to reject the settlement demands; (7) a judgment in excess of Precise's policy limit was entered and affirmed in Alabama; and (8) First Security had agreed to defend Precise in any state in the United States and to provide liability coverage for claims in any state. *See* Order of March 29, 1996, at 2.

3

would have been sufficient to settle the case before the deliberating jury asked questions that indicated the virtual certainty of a verdict against Precise. Kelley also said that Watts, while in Birmingham, gave Kelley instructions and authority in connection with settlement discussions. Thus, First Security, in the person of Watts, was actually present in Alabama when it negligently failed to settle the lawsuit against Precise for an amount within Precise's approximately $900,000 policy limit.

The Renewed Motion also refers the court to deposition testimony given in February 1996 by Marilyn Walczak, First Security's vice president of commercial underwriting. Walczak's deposition testimony was not before the court when the original motion to dismiss was heard and decided, and First Security offered no reason for waiting more than a year after the deposition before offering portions of her testimony to the court. In any event, rather than weighing against a finding of personal jurisdiction, some of Walczak's statements provide further evidence that the exercise of such jurisdiction was appropriate and warranted under the circumstances of this case. She admitted that First Security knew when it issued a policy to Precise that claims might arise and have to be defended anywhere in the United States. (Walczak Depo. at 67-68.) Specifically, Walczak testified as follows:

> Q. So when First Security issued this policy, it was aware that claims might arise in states other than Massachusetts; is that correct?
>
> MS. STOCKHAM: Objection to form.
>
> A. We had no knowledge of what states they were doing business in other than Massachusetts.
>
> Q. (BY MR. QUARLES) But you were aware because of this coverage provision that you were insuring coverage risks that arose anywhere in the United States; isn't that correct?
>
> MS. STOCKHAM: Object to the form.
>
> A. We were aware that we were providing coverage, yes, for this territory based on the policy forms.

(Walczak Depo. at 67-68.) Walczak also acknowledged that Watts had traveled to Alabama to conduct business on behalf of First Security in connection with the claim against Precise, and that First Security's insureds under its business relationship with the U.S. Scaffold and Ladder Association were dispersed among numerous states around the country. (Walczak Depo. at 13, 46, 48-50.) Therefore, Walczak's testimony does nothing to persuade the court that the exercise of jurisdiction over First Security "offend[s] `traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S.

5

310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).

## CONCLUSION

For the foregoing reasons, the court holds that defendant's Renewed Motion to Dismiss is due to be denied. An Order denying defendant's motion shall be entered contemporaneously herewith.

**DONE** this 7th day of January, 1998.

SHARON LOVELACE BLACKBURN
United States District Judge