IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARY W. CRUICKSHANK, Trustee in Bankruptcy of Precise Engineering, Inc., | ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | CV-95-B-1440-S |
| FIRST SECURITY CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

This matter is before the court on defendant's Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial, or, in the Alternative, Motion for Remittitur (the "JNOV motion") and defendant's separately filed Motion to Set Aside Award of Interest (the "Interest motion"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motions are due to be denied.[1]

---

[1] With only minor changes, the court has adopted the opinion proposed by the plaintiff. The opinion reflects the findings of the court as expressed orally to counsel at the hearing on the post-trial motions.

## I. FACTUAL SUMMARY

Plaintiff Gary W. Cruickshank ("Cruickshank"), Trustee in Bankruptcy of Precise Engineering, Inc. ("Precise"), sued defendant First Security Casualty Company ("First Security"), alleging that First Security negligently or in bad faith failed to settle an earlier products liability lawsuit against Precise in the Circuit Court of Jefferson County, Alabama. First Security defended Precise in the earlier lawsuit under the terms of a liability insurance policy issued by First Security. In May 1992, a jury returned a verdict against Precise in the amount of $2.7 million, which was about $1.8 million in excess of the policy limit available to Precise at that time.

At the trial of Cruickshank's subsequent action in this court, the jury found that First Security acted negligently in failing to settle the earlier lawsuit for an amount within Precise's policy limit. The jury awarded Cruickshank compensatory damages in the total amount of $2,854,157.00. The total compensatory damages included the amount of the excess judgment against Precise plus $1,046,407.00 in interest on that amount, computed at a 12 percent simple annual rate.

## II. STANDARD FOR DECIDING THE MOTIONS

To decide a motion for judgment notwithstanding the verdict, a court should consider all of the evidence "`in the light and with all reasonable inferences most favorable to the party opposed to the motion.'" *Spellissy v. United Technologies Corp.*, 837 F.2d 967, 972 (11th Cir. 1988) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969)); *see also National Car Rental Sys., Inc. v. Better Monkey Grip Co.*, 511 F.2d 724, 730 (5th Cir.) (noting that a judgment notwithstanding the verdict "requires a decision of law that the findings are not supported"), *cert. denied*, 423 U.S. 894, 986, 96 S. Ct. 193, 394 (1975).

"A court may grant a motion for new trial when the verdict is against the clear weight of the evidence, when damages are excessive, or when the court determines that the trial was not fair." *Hall v. Norfolk S. Ry.*, 829 F. Supp. 1571, 1579 (N.D. Ga. 1993) (citing *National Car Rental*). A motion for a new trial also may be granted if the movant shows "substantial errors in the admission of evidence or the giving or refusal of instructions." *Id.* Additionally, a new trial is appropriate if the court "finds a jury verdict to result from passion or prejudice." *Lowe v. General Motors Corp.*, 624 F.2d 1373, 1383 (5th Cir. 1980). A verdict that the court finds to be excessive may be cured by a remittitur. *See id.*

## III. DISCUSSION

The court has considered each of the grounds stated in the JNOV motion and the Interest motion and finds that none justify disturbing the verdict in this case. First Security has offered no legal or factual basis for most of the 84 grounds listed in the JNOV motion. Many of the listed grounds are merely conclusory, nonspecific allegations of error, such as number 60: "For that the Court erred to reversal in sustaining objections made by plaintiff during or before the testimony of Stuart Leach, Chuck Kelley, Ray Watts, Lee Pittman, Vernon Wells, Dan Gibson, James Halverson, Bob Cooper and Jimmy Simpson." Such generalized statements do not adequately identify for the court any alleged errors. To the extent that the JNOV motion broadly asserts that the jury verdict was not supported by substantial evidence, such an assertion is without merit. Ample and substantial evidence introduced at trial supported the jury's finding that First Security negligently failed to settle the lawsuit against Precise.

A number of other purported grounds stated in the JNOV motion pertain to issues previously decided by the court in the context of various other motions over the course of this litigation. For example, the JNOV motion and First Security's accompanying brief again raise issues of personal jurisdiction, venue, transfer of venue pursuant to 28 U.S.C. § 1404, abatement of the action, choice of law, the statute of limitations, the effect of the settlement of an action

against the liability insurer for Kingsberry Homes, Inc., the grounds asserted by First Security in its motions for summary judgment and a directed verdict, First Security's pretrial motion to disqualify Larry Childs, the inadmissibility of the transcript of the "deposition" of Edith Fischer, the substantive law of Alabama governing actions against insurers for bad faith or negligent failure to settle, and the court's rulings on motions in limine. In a separate memorandum opinion and order, the court is addressing First Security's renewed motion to dismiss on the grounds of lack of personal jurisdiction. As to the remaining grounds that First Security actually discussed in its brief or during oral argument on the JNOV motion and the Interest motion, it is unnecessary to revisit those that the court previously considered and decided. First Security presented no authorities or facts that would persuade the court to alter its earlier conclusions.[2/]

        The JNOV motion and the Interest motion also present several issues that were addressed orally by the court and the parties before or during the trial of this matter. None would warrant granting First Security the relief it seeks. Nevertheless, this Memorandum Opinion will specifically discuss three issues to

---

[2/] The court would note in passing that, as to First Security's pretrial motion to have Larry B. Childs disqualified as counsel for plaintiff, events at trial confirmed that Childs was *not* due to be disqualified. First Security did not call Childs as a witness. Further, the testimony which First Security earlier indicated that Childs might give as a witness would have been either immaterial or duplicative of other evidence. Thus, Childs clearly was not a necessary witness.

5

which the court has not had occasion to write previously: (1) the justification for the interest component of the jury verdict, which First Security challenges in both motions; (2) the admissibility of the testimony at trial of the Honorable Stuart Leach; and (3) the court's refusal to remove juror Reiber for cause.

### A.   Interest

The court instructed the jury that, if it found in favor of plaintiff Cruickshank, an award of compensatory damages would necessarily include interest on the unpaid portion of the excess judgment against Precise. The court further instructed the jury as to the amount of such interest, which was computed by applying the 12 percent rate provided in section 8-8-10 of the Code of Alabama (1993). That statute provides:

> Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum, the provisions of Section 8-8-1 to the contrary notwithstanding; provided, that fees allowed a trustee, executor, administrator, or attorney and taxed as part of the cost of the proceeding shall bear interest at a like rate from the day of entry.

ALA. CODE § 8-8-10.

First Security asserts that Cruickshank was not entitled to any interest on the underlying judgment against Precise. Alternatively, First Security argues that it was improper to employ the 12 percent rate provided under section 8-8-10 of the Code of Alabama rather than a lower "prejudgment" interest rate. In response, Cruickshank contends that the 12 percent rate was necessary to fully compensate Precise for the legal injury caused by First Security's negligence. The court agrees with Cruickshank.

Whether a successful claimant is entitled to prejudgment interest is a question of state law. *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996). The general tort law of Alabama "permits recovery of all damages proximately caused by the wrongful acts of the defendant." *Continental Eagle Corp. v. Mokrzycki*, 611 So. 2d 313, 320 (Ala. 1992). The purpose of compensatory damages is to compensate the plaintiff for a legal injury. *Ross v. United States*, 640 F.2d 511, 521 (5th Cir. 1981); *Matheny v. Petersen*, 276 Ala. 478, 163 So. 2d 635, 638 (1964). A legal injury occurs when the injured party becomes liable to others, regardless of whether the party has actually paid any amount of money or is financially able to do so. *See Alabama Farm Bureau Mut. Casualty Ins. Co. v. Dalrymple*, 270 Ala. 119, 116 So. 2d 924, 925-26 (1959) (holding that a failure-to-settle claim does not require that the insured actually be able to pay an excess judgment); *see also Roland v. Krazy Glue, Inc.*, 342 So. 2d

7

383, 385 (Ala. Civ. App. 1977) ("Plaintiff is not required to prove she actually paid the expenses claimed as damages but only that she was liable for payment of them.").

The jury here found that First Security negligently failed to settle the products liability claim against its insured, Precise. This negligence proximately caused a legal injury to Precise in that Precise was held liable for a judgment more than $1.8 million in excess of its approximately $900,000 policy limit. Under section 8-8-10 of the Code of Alabama, Precise also became liable for 12 percent postjudgment interest on the $1.8 million excess judgment. Thus, the legal injury to Precise that proximately resulted from First Security's negligence included both the amount of the excess judgment itself and the amount of the statutory 12 percent interest for which Precise became obligated. The court finds that the 12 percent interest on the underlying judgment against Precise was properly included in the award as a component of the compensatory damages to which Cruickshank, as Precise's trustee in bankruptcy, is entitled as a result of First Security's negligent failure to settle the underlying lawsuit. Otherwise, the verdict in this action would not have provided full compensation for the legal injury sustained by Precise--an

injury that included not only the excess judgment, but also the interest on that judgment.[3/]

First Security's alternative position, that Cruickshank should be awarded interest only at Alabama's 6 percent "prejudgment" rate, misapprehends the *compensatory* nature of the award to Cruickshank. The 6 percent rate suggested by First Security would be inadequate to fully compensate Precise for the legal injury, which included the statutory 12 percent interest on the excess judgment.[4/]

In summary, the court finds that including 12 percent interest on the unpaid portion of the excess judgment is supported by applicable law. The evidence presented to the jury fully supported the amount of the verdict in favor of Cruickshank. Therefore, the verdict was not excessive.

---

[3/] Other courts also have held that statutory interest on a judgment is a proper element of the compensatory damages awarded in a subsequent suit against a third party whose misconduct resulted in the judgment. *See, e.g., Carpenter v. Automobile Club Interinsurance Exch.*, 58 F.3d 1296, 1305-06 (8th Cir. 1995); *Southern Farm Bureau Casualty Ins. Co. v. Mitchell*, 312 F.2d 485, 501-02 (8th Cir. 1963); *Hoekstre v. Golden B. Prods., Inc.*, 712 P.2d 149, 153 (Or. Ct. App. 1985), *review denied*, 715 P.2d 94 (Or. 1986); *Myers v. Ambassador Ins. Co.*, 508 A.2d 689, 692 (Vt. 1986).

[4/] First Security's assertion that holding it responsible for interest which Precise was unable to pay would deprive the insurance company of due process is without merit. Whether Precise was or is financially able to pay the interest is irrelevant; Precise suffered a legal injury as a result of being *indebted* to LaCombe in the amount of the excess judgment and statutory interest. *See Alabama Farm Bureau Mut. Casualty Ins. Co. v. Dalrymple*, 270 Ala. 119, 116 So. 2d 924, 925-26 (1959).

### B. Judge Leach's Testimony

First Security contends in the JNOV motion that the Honorable Stuart Leach, who presided at the trial of the products liability claim against Precise, was improperly permitted to testify as an expert at the trial of the present case although Cruickshank had identified him only as a potential fact witness. Contrary to the assertions in the JNOV Motion and First Security's supporting brief, however, Judge Leach did not testify as an expert. Indeed, the court expressly informed the jury that Judge Leach was not testifying as an expert. Judge Leach, who had retired from the bench before his testimony in this matter, appeared as a fact witness and testified about his personal knowledge of the products liability litigation.[5]

### C. Juror Reiber

The court is firmly convinced that it did not err in declining to remove juror Reiber for cause. As the JNOV motion mentions, Reiber became the jury's foreman. During the trial of this case, which spanned more than a week, it was apparent to the court that, notwithstanding his initial reluctance to

---

[5] Nor was Judge Leach's appearance as a fact witness in any way improper. No provision in Alabama's Canon of Judicial Ethics or the Federal Rules of Evidence precluded Judge Leach's testimony in this case. In failure-to-settle cases such as this, trial judges from the underlying actions commonly testify. *See, e.g., Gelinas v. Metropolitan Property & Liab. Ins. Co.*, 551 A.2d 962 (N.H. 1988); *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 404 N.E.2d 759 (Ohio 1980); *Trahan v. Central Mut. Ins. Co.*, 219 So. 2d 187 (La. Ct. App.), *application denied*, 222 So. 2d 66 (La. 1969).

serve on the jury, Reiber took his responsibility seriously. He appeared to pay close attention to the testimony, and his selection as jury foreman would seem to indicate that he assumed an active role in the jury's deliberations. During the trial, the court's courtroom deputy informed the court that juror Reiber was pleasant during all the breaks. Nothing about his conduct during the trial raised any question about his ability or willingness to act fairly and reasonably as a juror. First Security has not shown that it was unfairly prejudiced by Reiber's presence on the jury. In fact, First Security has offered no evidence, and the court knows of none, that Reiber comported himself in anything but a conscientious manner during the trial.

## IV. CONCLUSION

For the foregoing reasons, the court holds that defendant's JNOV motion and Interest motion are due to be denied. The verdict was supported by substantial evidence; it was not contrary to the great weight of the evidence; it was not excessive; and it not result from passion, prejudice or an unfair trial. No substantial errors in the court's evidentiary rulings or instructions to the jury have been shown. Therefore, an Order denying defendant's motions shall be entered contemporaneously herewith.

DONE this 7th day of January, 1998.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge